Cunningham *et al. v.* Hembree.

(*Nashville,* December Term, 1952.)

Opinion filed March 6, 1953.

McReynolds & Marks, of Clarksville, for appellants.

W. R. Fain, Jr., and James O. Noland, both of Clarksville, for appellees.

Mr. Chief Justice Neil delivered the opinion of the Court.

This is a Workmen's Compensation case in which the trial judge made an award in favor of the widow of the deceased employee. We will refer to the parties as they appeared in the trial court.

The petitioner, Mrs. Dovie Hembree, sued the defendants, Cunningham and Anderson and The Travelers Insurance Company in the county court of Montgomery County to recover compensation for the death of her husband, B. F. Hembree. The county judge found the issues in favor of the petitioner and awarded compensation. An appeal was prayed and granted to the Circuit Court where there was a hearing *de novo,* the Circuit Judge finding in favor of the petitioner and making an award of $10.50 per week for a period of 400 weeks and $244 for funeral expenses. The defendants have appealed and assigned errors.

The deceased was a day laborer and was employed by the defendants to help dig ditches for water mains at Fort Campbell, Kentucky. He died shortly after he started to work on the morning of June 18, 1951. The petition averred that "June 18th, 1951 was a very hot day and that B. F. Hembree was instructed to work in the open" with pick and shovel; that after working a very short while he complained of "shortness of breath and of being very hot". He was taken by a fellow workman to the foreman who had him conveyed to the nearest medical dispensary. From this dispensary he was taken to the Fort Campbell Hospital by ambulance. He was dead upon reaching the hospital. A physician, Dr. F. L. Liegner, 1st Lt., Medical Corps, certified that the death was caused by "Cerebro Vascular Accident, which words petitioner

alleges to be medical terms for a sun or heat stroke.'' The petition was later amended to allege that the deceased's ailment "to have been caused by a sun or heat stroke.''

The defendants filed an answer admitting the employment. The third and fourth paragraphs of the answer of the defendants say:

"Other than the death of B. F. Hembree, these defendants, neither admit nor deny the allegations of Section III of the petition and demand strict proof thereof.

"Defendants deny that B. F. Hembree's death was occasioned by an accident arising out of and in the course of his employment.''

At the conclusion of the proof there was a motion made to dismiss the petition, which the court overruled. The trial judge after briefly reviewing the testimony found as follows:

"Unfortunately for the Court, the only physician or doctor who saw this deceased was not available as a witness upon the hearing of this cause. The three doctors who did testify have done the very best they could, but all of them have testified under the handicap of not having seen the deceased, and even the doctor who signed the death certificate did not see him until after he died; therefore, the Court is compelled to look almost entirely to lay testimony in order to determine the cause of the death of the deceased. According to the lay testimony in this case, the deceased was a man previously in good health, and left home for work on the morning of the day he died, feeling well, and had never complained, so far as those who knew him were able to find out, about having had any serious illness or ailment.

"The witnesses who testified as to the atmospheric conditions on the date that the deceased died, have variously estimated the temperature to range from 75 degrees to 98 degrees, but approximately all the lay witnesses, at any rate most of them, testified that it was a very hot day and that the deceased died within just a few minutes after he was stricken, while performing his customary work of a day laborer, and it is rather difficult for the Court to conceive of how a man, apparently was in good health, like this man apparently was, could have failed to perspire while he was working, shoveling dirt out of a ditch, while the weather was hot, even though performing that work for only about fifteen or twenty minutes, unless something suddenly went wrong with the heat regulating mechanism of his body.

"Therefore, the Court finds the following facts in this case:

"The said B. F. Hembree died as a result of a condition which was caused or induced by a sun stroke or heat stroke, which arose out of and in the course of his employment; that the death certificate filed in this cause is only prima facie evidence of the cause of death, and the other evidence in the case is sufficient to establish that death of the deceased was caused or induced by a sun stroke or heat stroke; that the Petitioner in this case, who is widow of the deceased, is entitled to compensation in the sum of $10.50 per week for 400 weeks, plus a lump sum of $244.00 to reimburse her for funeral expenses".

The assignments of error raise the following questions:

(1) There is no material evidence to support the judgment.

(2)   There is no material evidence that B. F. Hembree died as a result of a condition which was caused or induced by a sun or heat stroke, etc.

(3)   That the Court's finding that death was caused by or induced by a sun or heat stroke was "a matter of conjecture and surmise."

(4)   That the trial court erred in allowing Dr. A. F. Russell to testify over defendants' objection that, "the work Mr. Hembree was doing there that morning aggravated a condition or any way contributed to his death, when the petition did not contain such an allegation."

Counsel for both the appellants and the appellee have ably and diligently argued their respective theories at the bar of this Court. The case is not without serious difficulties. The assignments of error, singly and collectively, present the single question, to wit, whether or not the evidence supports the judgment of the trial court that Mr. Hembree died or could have died, from a heart condition that was aggravated or induced by a sun or heat stroke.

The objection to the testimony of Dr. Russell, a medical expert, should not be ruled as inadmissible upon the ground that the petition failed to allege specifically that the condition of the deceased was aggravated by a sun stroke.

■■   The averment in the petition that the death of the employee "arose out of and in the course of his employment" is sufficient to let in evidence tending to show any cause as contributing to his death. In compensation cases, "the technicalities of the common law are abolished, *whether in respect of the forms of pleading, the rules respecting parties, or the rules of evidence.*" (Emphasis supplied.) *Hartwell Motor Co., Inc.* v. *Hickerson*, 160 Tenn. 513, 525, 26 S. W. (2d) 153, 157.

■ It is settled law in this State that compensation will not be awarded where the cause of death is a matter of speculation. The cases where the employee dies suddenly while at work, as in *Hartwell Motor Co.* v. *Hickerson, supra; Home Ice Co.* v. *Franzini,* 161 Tenn. 395, 32 S. W. (2d) 1032; *Milstead* v. *Kaylor,* 186 Tenn. 642, 212 S. W. (2d) 610; and numerous other cases, whether it results from natural causes, or a cause "arising out of" the employment, have vexed the courts in every state with a problem that is difficult of solution.

■ The courts are not privileged to indulge in speculation and conjecture, but must rest every judgment upon the truth which in most cases is very elusive. We have sanctioned the proposition "that, where an employee is found dead at his post of labor, without direct evidence as to the manner of his death, an inference may arise of an accident springing out of and in the course of his employment". *Home Ice Co.* v. *Franzini,* supra [161 Tenn. 395, 32 S. W. (2d) 1033]. Reaffirmed in *Milstead* v. *Kaylor,* supra. Where a *prima facie* case is thus made out the burden shifts to the employer to produce evidence to overthrow such a *prima facie* case. *Shockley* v. *Morristown Produce & Ice Co.,* 158 Tenn. 148, 11 S. W. (2d) 900.

■ We think the petitioner in the case at bar made out a *prima facie* case under the authorities and the death certificate to the effect that death was due to "Cerebro Vascular Accident". There was also other parol proof to support the petitioner's theory that "sun or heat stroke" was a contributing cause, or could have aggravated a condition resulting in death.

In a review of most of our decisions, as well as some from other jurisdictions, we find what appears to be a general belief among some members of the legal profession that in this class of cases what is meant by the peti-

tioner having the burden of proof is that the proof on his behalf must be sufficiently strong that the determinative issues are *not a matter of speculation*. This implies that the petitioner must establish such issues to a degree of certainty. This is certainly an erroneous view since having made out a *prima facie* case "the burden shifts to the employer to produce evidence to overthrow [such a *prima facie* case]". *Milstead* v. *Kaylor,* supra [186 Tenn. 642, 212 S. W. (2d) 614].

Where a *prima facie* case is made out by the petitioner, i.e. that death resulted from some accidental cause that is within the Workmen's Compensation Statute, Code, Sec. 6851 et seq., the duty of taking the case out of the realm of speculation devolves upon the defendant. In other words the defendant is required to offer testimony of sufficient probative force as will "overthrow" the *prima facie* case against him. The employer cannot defend on the ground that the cause of death was speculative if he has it in his power to present evidence that would take the issue out of the field of speculation.

The petitioner made out more than a *prima facie* case. There was no autopsy as in the case of *Anderson* v. *Volz Const. Co.,* 183 Tenn. 169, 191 S. W. (2d) 436, wherein the witnesses who held the autopsy concurred in finding and in testifying that the deceased died, not from sun stroke, but from a heart ailment.

In the case at bar the death certificate states the cause of death as Cerebro Vascular Accident. The petitioner's medical expert, Dr. Russell, testified, "I think there are different types of cerebro vascular accidents, but to me it means a stroke." (Tr. p. 108). In response to a hypothetical question, giving a complete history of the case, including the temperature at the time of his death as 75 to 85 degrees, he testified, "* * * in my opinion

anything he did within 20 or 30 minutes prior to his more or less sudden death, I would think would contribute to it to a certain degree.'' The lay witnesses who testified as to atmospheric conditions on the date the deceased died variously estimated the temperature at from 75 to 98 degrees. Most of them testified that it was a very hot day and that deceased died within a few minutes after he was stricken.

The only evidence offered to counter the case as made out by the petitioner is the testimony of a medical expert who, in response to a hypothetical question, expressed the opinion that the deceased did not die from a sun or heat stroke and that it was not a contributing cause.

█ We cannot speculate upon what an autopsy would have shown. It was conclusive of the cause of death in the case of *Anderson* v. *Volz Const. Co.*, supra. But considering the evidence to which reference is made in this opinion we cannot say that the trial judge was in error in resolving the issue in favor of the petitioner. Under the authority of *Tenn. Products Corp.* v. *Gravitt,* 182 Tenn. 54, 56, 184 S. W. (2d) 164, there being some material evidence to sustain the finding of the trial judge his judgment must be affirmed.

█ In conclusion it should be said that this is another ''border-line'' case, and no doubt the learned trial judge in his decision felt constrained to follow our holding in *Tapp* v. *Tapp,* 192 Tenn. 1, 4, 236 S. W. (2d) 977, 978, ''Any reasonable doubt as to whether the act or injury of the employee arose out of the employment should be resolved in favor of the employee or dependent.''

The assignments of error are overruled, and the judgment of the trial court is affirmed. The case is remanded for enforcement of the judgment.